Good morning. May it please the court, Jose Sullivan Cepeda, Deputy Attorney General for the Defendant's State of California. At this point, I'd like to reserve five minutes for rebuttal, please. All right, by two o'clock. Yes, Your Honor. This case presents a question of whether a sovereign state can be held liable for a third party's attorney's fees where it was dismissed as immune over three and a half years after the case, after the district court entered judgment on a judgment on which the state is not held liable, despite the fact that the state... We know in general that the answer to your question is yes, right? Because if this person who was sued had been, I mean, an employee of the State of California who was otherwise properly sued into ex-party and the state would be responsible. Your Honor, yes, Your Honor, we do not dispute that if a state officer was properly sued, then the state could be held liable. So the way you're posing the question, the answer is yes, because a sovereign state who's not a party can be held liable for fees. Your Honor, but the second part of my point was where there was no state officer that was properly sued and the only state officer that had been sued was dismissed as immune as well in 2008. But that's the central question, therefore, because the district, which you don't really address in your brief, the district court held that for this state actor. The district court had held that much earlier in the litigation and that was the basis for the fees. So the rest of your arguments are kind of no nevermind. The only question is, was this person the properly a state actor? Is that right? Or you're saying has to be on the payroll of the state if he's acting for the state. What exactly is your argument? Your Honor, our argument was that the district, what the district court did is it completed two different questions. What it had decided earlier was that the sheriff was acting on behalf of the state, for purposes of immunity under the 11th Amendment for purposes of 1983 liability of the county. The district court had not previously decided whether the sheriff was a state officer, was an agent of the state for purposes of liability, which is what will bring this case within Hutto v. Finney and Spain v. Montanos, for example, the cases that the the district court dealt with motions to dismiss of the various parties. This was back in, I believe, August of 2016. By that point, the state had already been dismissed as immune. The state was dismissed in February 2016. There was no dispute that the state was a sovereign entity. The plaintiffs did not dispute that aspect of the case. The question before the district court in August 2016, when it ruled on the motions on October 2016, pardon, was whether the attorney general had been properly sued under the Ex parte Young exception. And the answer to this question was no. The district court also addressed whether the sheriff was immune under the 11th Amendment and whether the city could be held liable. The question of whether at that point, because there had been no liability asserted and there was no issue of fees, at that point, the district court did not have a vocation to consider the question of whether the sheriff of the city and county of San Francisco, which had been separately represented, had forged its own path throughout the litigation. And in that situation, the district court did not have a vocation to consider what it said or assumed it had decided for purposes of attorney's fees, which is whether the sheriff is, quote, an agent of the state. And that's what we submit. Why is the difference between acting on behalf of the state and being an agent of the state? Acting on behalf of the state is a term of archer honor in the context of the 11th Amendment immunity and perhaps other situations. In those particular situations, what the court is trying to get at is for purposes of the extension of the immunity of a particular officer, is the officer acting on behalf of the state, quote, unquote, in the sense that it is entitled to the immunity that the state itself has. On the other hand, we submit to the court that the question of agency is really more of a question of, for lack of a better term, a common law type of agency. You're giving authority for the proposition that those are two different concepts in the current context. Basically, by saying that he's acting for the state, you're saying that the city and the county couldn't be sued and he couldn't be sued for damages because he has the state's immunity because he's acting for the state. So now you're saying that there's something different between that idea and the question of whether he is the agent of the state. Now, what's the difference? Well, Your Honor, I would like to pose a hypothetical situation to illustrate this particular point. Let's suppose there was a lawsuit involving a hit and run situation. The plaintiff is a pedestrian, the defendant is the driver, and the defendant hits the pedestrian. There's a situation where the plaintiff sues the defendant. The defendant is found liable and negotiates attorney's fees and says, we agree that we're liable or we've been found liable, but we were driving as an agent of Lyft or Uber or some other company. Therefore, the attorney's fees should run against that party. In that situation, Your Honor, we'd submit that the appropriate remedy for the district court to do or the court to do is to deny that motion for two different reasons. The particular entity that's allegedly the responsible party is not before the court. Secondarily, which we'd submit was the situation here because once the state was dismissed for all practical purposes, the state was no longer a party. Secondarily, we'd submit to you to the court that in that particular situation, the district court had no basis for finding that there was an agency relationship. In that situation, the district court would have to go ahead and assess what was the basis for the driver saying, hey, I was driving for this particular company, and therefore, there's an agency relationship. Here we know what the basis is. The basis is that the law requiring him to follow the bail was a state law and that the entity that set the bail, which was state courts, was also a state agency. Therefore, the sheriff had absolutely no say in what he was doing. He was simply following what he was required to do by a state law and the state set bail list. That's the basis. We disagree, Your Honor. That is the basis for the district court finding that the sheriff was liable on the claims that the plaintiffs asserted against them. But that says nothing about the agency relationship between the state and the sheriff in this particular situation. An agent, by definition, an agency relationship would mean that the state is directing the sheriff to do something. He is directing him to do this, exactly this. They're completely directing. He has nothing to do except what he's being told to do. Your Honor, what the law states is there's that, and I don't want to get too much into the particular details because it's a complex area in terms of what the bail law requires, but what the bail says is this is the way the system shall work. That's the extent of it. There is also a misdemeanor threat if he doesn't do it? There are provisions that state that certain officers, if they do actions that do not comport with the bail law, can be held liable for misdemeanor. But those particular provisions are not at issue here. There is no provision that has been pointed to that the state can go ahead and force the sheriff to do this in this particular situation. And in fact, the district court so concluded in granting the motion to dismiss by the attorney general in October of 2016, the plaintiffs back then and actually in the operative third amendment complaint alleged the sheriff through, pardon, the attorney general of the state of California enforces the bail schedule by requiring the sheriff to do this. And the district court said, no, there is nothing here in these allegations. There's nothing under state law other than the general provision in the California constitution that states that the attorney general supervises quote unquote, the sheriffs and can require reports of them other than that big general provision. There is nothing that says that the state can enforce the sheriff's enforcement of the bail schedule or any other provision of law. Also, let me help you catch your breath a minute because I want to go back to your hypothetical because what's been concerned, a big concern of mine is the state was dismissed out of the lawsuit a year before all of this came about. Now, how did this, how did the state get back into this case and at what point? Because my understanding was, is that the attorney general was invited back into the mediation after the sheriff and the parties that were seeking the damages had agreed. And they, my understanding is that they then invited the attorney general back into the negotiation of which he refused. Now, when and where and how did the state get back into the And number two, in regards to that, when was the state given the opportunity to contest whether or not they were the, the agent of, how did all that come about? Thank you, your honor. And bringing back to the, actually beyond the hypothetical to answer the, the, your honors question. The answer to the question is the state was not a party to the, to these proceedings since February, 2016, when he was dismissed as immune until the plaintiffs and the sheriff of the city county of San Francisco had started negotiating attorney's fees. Now there had been much water under the bridge. By that point, the sheriff had entered an answer saying, I'm not going to defend the state law. The sheriff and the, and an intervener and the and the sheriff had stipulated to a judgment had negotiated the judgment unilaterally with the plaintiffs, which the district court then entered in 2008. Wasn't the state invited into that? Wasn't the state has to participate in that and it declined? No, your honor. That is incorrect. I'd like to go ahead and, and emphasize that the state was not involved in negotiating the settlement of the stipulated injunction injunction. The state was invited once the plaintiff, exactly. So it was at that point that the, that the state indicated that it was going to intervene in the litigation and then decided not to, but it almost surely could have. That is correct, your honor. And we're not, we're not contesting that initially the district court did grant us the opportunity to move to intervene, but we ultimately declined to intervene. And there was no state involvement in the case from that. Tell me how this is different from any other situation in which a state actor is sued under ex parte in this official capacity and his or her official capacity. And let's, let's say it's a fairly independent state position like the attorney general. The difference is your honor, that here by definition, there is no state officer. The attorney general is a state officer in this state under the state constitution. And the attorney general speaks for the state in those particular types of litigations. There's 58 counties in the state of California, all of which have their own sheriff. All of those individuals have their, their own relationship with the county or the city, or in this case, the city and the county. And that is the entity under state law that has supervision and control over those individuals. This court asked for supplemental briefing on certain provisions of state law. And we responded to it yesterday and we pointed out how under the California constitution, there's different sets of provisions that govern both sets. We pointed also to the California government code that specifies that sheriffs are county local officials. This case turns on the state's bail machine. And so for purposes of that regime, the sheriff has no discretion and is, and seems to be required to follow the state law. Your honor, yes, those were the findings of the district court. And that seems a fair reading of the statute. Yeah, it's not incorrect, is it? There's, for purposes of this bill, which is, you know, it's anonymous really, because for many other purposes, the sheriff is acting on behalf of the county. But for this particular purpose, it does seem that it's acting on behalf of the state. I need to point out that maybe we've lost Judge Brisson. Judge Brisson? No wonder I got a question in. Your honor, how would you like me to proceed? Should we wait until we... Let's stop for a second. Deng, are you there? Can you... Yes, I am. I will see what I can do to bring Judge Brisson back. Maybe she just needs to log off and log back on. I had to do that yesterday. She may have to reconnect, yes. Does she even know that yet though? Can you call her? Yes, I'm going to do that right now.  Well, that poor lawyer for the social security said it was just too stressful to use the Zoom. You know, I kind of relate. Okay. Deng? Yes? Have you been able to contact Judge Brisson? I'm trying to call her and Therese right now. Okay. Well, I wonder if we should proceed and let her listen to the recording. For all we know, she is hearing. What we are saying. What do you think, Judge Baldock? Fine with me. Counsel, I assume they're ready to proceed whether we do or don't. Yeah. All right. Mr. Zepeda, you're answering a question that I had, which is, I mean, I realize under the state law regime, it's anomalous in that generally, and I've written an opinion on this street. So generally, the sheriffs are deemed to be acting on behalf of the county, but that's because of the statutory scheme that delegates the authority. But this bail regime seems to require the sheriff to do particular things on behalf of the state. Your Honor, you are correct that there is case law dealing with different aspects of state law. And I think that the way you put it, the phrase is apt. That's what the case law calls it, are deemed to act. And I think that's what we need to emphasize. There's cases that hold that in certain contexts, the sheriffs are deemed to act for the state. In other contexts, they're deemed to act for the local entity. Those are questions that go not to liability, not to agency, but to whether to immunity or whether or who's the proper party under section 1983. There is no case that has been brought to this court's attention. Counsel, that's a question I think Judge Berzon was concerned about, was that, where's the space between agency and who you're acting on behalf of? Well, Your Honor, and the answer to the question is we'd submit to, and there's case law holding this, that for purposes of immunity, that is a question, that is a mixed question of law and fact. And the courts look at the nature of the state law and look at federal law to assess that particular question. We'd submit to the court that the question of agency for purposes of whether a for purposes of agency is a different question. That really goes to the question of state law, and it's a question of fact. You look under the restatement of agency, and I see that I've gone over my time, and I'd like to reserve some time for rebuttal. Yes, but I'd like to ask a question, and I apologize for disappearing. Yes. But if the state's not liable, who's liable? Your Honor, the entity that's liable here is the sheriff. The sheriff? No, the sheriff is, we know, the one thing we know about the sheriff here is that he is being sued in his official capacity, and according to Hutto is, and other cases, is really a stand-in based on being really a legal fiction created by ex parte Young for whatever entity is responsible for what he did, and the one person who isn't going to pay the fees is the sheriff because he is not being sued in his personal capacity. In fact, even when they are sued in their personal capacity, they're reimbursed, but in any event, he isn't being sued in his personal capacity, so he's not liable, so who's liable? Your Honor, the second part of my answer was, first of all, the sheriff is the entity that's been deemed to be liable based on the claim, and under the plaintiffs of section 1988, that would be the party against whom the fee runs. For practical purposes, because the sheriff is supervised by the city and county of San Francisco, then the city is liable for this, and that is a question of state and local law. That is not a question of federal law, and this is where the district court went awry in this particular situation. Because the state had already been dismissed, when the plaintiffs settled the sheriff of San Francisco, then the fee issue could have been disposed by the district court saying you've settled the attorney's fees, and under 42 U.S. Code section 1988, the fees go against the party against whom the plaintiff has prevailed. Therefore, the fees should run against the sheriff, whereas as a matter of state law, you think you're entitled to indemnity or that another entity should have to pay for that. That is a question that is outside the purview of the action before the district court. Particularly here, going back to Judge Baldock's question, given that the state was dismissed back in 2016, that was a question of either a question of fact or a question of law. It was not a question that the district court had decided. The district court didn't look at the state law provisions regarding the particular unique circumstances of the relationship between the sheriff and the state of California, or the facts of the actions of the sheriff and who led those litigation choices. There's nothing that has been presented that shows that the state had any role in that particular aspect of it. And I am past the time. I think Judge Baldock has a question too. Yes, Judge Baldock. Thank you. The argument that you're making now is the distinction between state law and federal law. As to the question of fact, as to the position of the sheriff with the state, then why did you ever ask to certify this question to the state supreme court as to whether or not he was acting under California law, is duly recognized as a state agent? This kind of goes along with Judge Wardlaw's question, or was he acting in his capacity as a sheriff who is not a state actor under your argument because he's traditionally identified as the county sheriff, duly elected? Did you ever, they're ever questioned about whether to certify that, if it's certifiable? No, your honor. I'm not sure. I don't know the answer to whether it's certifiable or not, but once the district court issued its ruling on the attorney's fees aspect of it, our legal recourse was to seek appeal of that to this particular court. Well, that, but that comes back to the point that you were a party at that time and had the right to raise these questions before the district court and evidently didn't raise them. We did raise them, your honor. And we opposed the district court, the party's purported stipulation trying to hold the state liable for attorney's fees. The district court, the plaintiffs and the sheriff submitted this particular proposal to the city. And at that point, the state of California, subject to its sovereign immunity, explained to the district court that it could not be held liable for attorney's fees because it is immune and because there was no agency relationship. We raised those particular issues before the district court. The stipulation is not really an issue, is it? I mean, the district court didn't hold that you're stipulated. And I presumably wouldn't hold that either. The question is, are you liable? I agree with you that they can't stipulate that you're liable, but the question is still, are you liable? Yes, your honor. That's true. The question is, whether we're liable. The stipulation is off the table in terms of the legal issue before us now. Is that right? And we're not disputing that, your honor. But that just gets back to the question of what was the district court's authority over the state of California, which was not a party at that point. Was the district court's authority to hold a non-party liable? And assuming that the district court's authority or concluded that the authority was that there was an agency relationship, our argument is that there was nothing factually or legally to support that other than the plaintiffs of the statute, and that's not enough. And we submitted cases to this court that are out-of-circuit cases, admittedly, but cases that hold that the fact that the local entity is the one that's the statute does not mean that the fee should not run against that particular entity. We submitted the new jurisdiction to the ordinance. So you're well over your time. I think Judge Brisson, do you have another question or should we hear from the other side? Yes. And okay. So as I understand it, the other side, Mr. Goldman, you are taking 13 minutes and Mr. Husseini, two minutes. Thank you, Your Honor. All right, please proceed. Thank you, Jeremy Goldman on behalf of the sheriff. May it please the court. I want to address the question that you spent some time on with the state. The analysis under McMillian, which the district court applied when it held that the sheriff acted on behalf of the state, is a determination of liability. The state's argument that it only goes to immunity and doesn't establish which public entity is liable is incorrect. And we know that from McMillian itself, which sets out this analysis. If you look at footnote two of McMillian, it says, we have explained that a suit against a governmental officer in his official capacity is the same as a suit against the entity of which the officer is an agent and that victory in such an official capacity suit imposes liability on the entity that the officer represents. And it cites Brandon versus Holt. Now at that point, counsel, did the state, I mean, excuse me, did the, I guess it's the state, have the opportunity to litigate fully the question of whether or not the sheriff was an agent or was acting as the sheriff of a county. In other words, the agency question that the court determined, finally, you sheriff are an agent that renders the state liable. Was that litigated by the state and y'all? The state, in the motion practice, the state did not contest the sheriff's argument that the sheriff was acting on behalf of the state. Was that, that was while the state was still in litigation, but it was, it was trying to get in. Did it ever participate in the litigation substantively in the state, other than saying we don't belong here? Well, it did make arguments defending the constitutionality of the bail schedule in its original, I think two, in two separate motions to dismiss. So it was making substantive arguments about the bail schedule. Well, how could it do that? And then it sort of, it's, it's sovereign immunity, ordinarily sovereign immunity is not jurisdictional. If you participate, then you're in. So how could it do both? It did, it did do both. I mean, it was a small section. It moved on the basis of younger abstention. 11th amendment immunity. And it also said the bail schedule is constitutional. All three arguments were in its, in its motion to dismiss. At the same point, it could have, it could have raised an issue with regard to the, I don't know what the time sequence is. It could have raised an issue with regard to whether the sheriff was a state actor for liability purposes, but didn't, which is interesting. It could have raised that, but it also, if once the district court held that the state, then under Brandon versus Holt, the state was the public entity that was going to be liable. And the state knew that, that the state was a party to the case in the same way that it's a party anytime there's an official who is sued in their official capacity on behalf of the state. Maybe it could have tried to take an interlocutory, certify an interlocutory appeal from that decision if it disagreed, or it certainly could have appealed the judgment. If it disputed that it was the public entity. But once it's done that, it's waived its immunity, right? I'm sorry, I didn't hear you, your honor. If it does that, it's waived its immunity. It couldn't both be there and not be there. It, could it appeal, could it waive, could it appeal the determination that it, that the, I don't know that it would waive its immunity. Yeah, I mean, it's either in the case or it isn't in the case. No, I mean, there are, there are cases where this, where the state has intervened in the case and hasn't waived its 11th amendment. If it intervened. And so it definitely could have appealed the judgment and said, we are not, we are not the because the sheriff does not act on behalf of the state, but it didn't do that. And so that that's why we've argued that the question now is not even properly before this court. Did he do that? They could have appealed, but the reason why at that stage, when they were still in the litigation, did they not appeal because the district court said, I'm going to out of the opinion because of their immunity and their 11th amendment immunity. The state of California was out of the case. No, but before they were allowed out of the case, as I understand it, the issue of the agency was being litigated and the state was still a party at that time. And you said they could appeal when they determined that the sheriff was the agency, but did they, the immunity, the 11th amendment immunity have an effect on them not proceeding because they were going to get out. I mean, I can't explain why, I don't know why they, what considerations went into not appealing or what considerations went into not intervening after they told the court that they would. I understand that. I guess I'd come back to the point that your statement to us is that the agency determination was made when the state was still in the action before they were let out on their 11th amendment immunity. The attorney general was in at that point, the state was not in at that point. But so the attorney general certainly knew because it was in the same order that the court found the sheriff was acting on behalf of the state. And you, as I understand, though, I want to make sure that counsel that under the 1983, though, the 11th amendment immunity for fees doesn't apply. That's correct. I think what I think it is not. And once it has been determined that the official is acting on behalf of the state, state law ceases to be relevant to the question of liability for fees, because it just follows from the fact that the state is the public entity that's liable on the judgment. Well, that's the reason why I'm struggling with the point. Did the state have the opportunity under even whether you want to call it due process or what to argue the question about the agency versus the sheriff's position of being a county official rather than a state official? That's what's hanging me up. Tremendously, in this case. The state always had the opportunity to do that. Doesn't the state have the opportunity now? In other words, if it didn't have the opportunity earlier and if it's critical to its liability for the fees, it has the opportunity now. I don't understand it exactly to be arguing that. It's arguing that it doesn't. I understand it to be arguing now. It doesn't matter whether he was acting for the state for the purpose he was held to be acting for the state. The state's chosen liable for the fees, but they could have chosen. I would believe a different argument. They're not going to be bound. If they weren't a party, they're not going to be bound by ratio to caught up by the early or the pace by the earlier ruling that he was liable. They could argue it now. They just haven't. It's clear that under Brandon v. Holt and under McMillian itself, the state is the public entity that's liable. I understand that. If they had come in and said, we didn't have the chance to tell you this earlier, but actually we think you were wrong way back then about that. Could they do that? Could they have done that? They could have, but they haven't even claimed that they weren't able to do that. It's murky whether they were able to do that because obviously their biggest interest was to get out altogether, not to argue anything. The question is, if that was a necessary part of their current argument about why they're not liable for fees, they could have made that argument, but that's not how they're arguing it. I'm going to ask Ms. Giuseppetta, but I don't think it's how they're arguing it. How are you planning to enforce this judgment against the state, since the state's not a party? The state is a party. The state has said that it will pay the judgment if this court affirms the district court's decision. That doesn't make it a party. That's the whole strangeness of this. It's the entity that's liable on the judgment. Why should this have been decided in this case altogether? What ordinarily would happen is that the fee award would be against the sheriff, and then after that, somebody would figure out what that meant. The sheriff, presumably, would go to the state and say, pay up because I was acting in my official capacity for you. If they didn't, I suppose you could go back to the district court and say they wouldn't pay, or go to the state court and say they're supposed to pay. Aren't the fees usually assessed against whoever the actual defendant is, with the understanding that the state's going to pay? If this were, for example, a regular state official, like the attorney general, and somebody came in for fees, the fee award would be against the defendant in his official capacity. We've cited many cases in which both district courts and circuit courts have decided this precise question. What they've decided is that the state is liable ultimately, but as a technical matter, who does the fee award run against? Well, as a technical matter, it's a question of federal law. Which entity does the award run against? The federal court is the proper court to decide which entity its fee award runs against, and that's what all of the cases we've cited have decided. I'm asking because I don't know. In Hutto v. Finney, for example, where they said, in effect, it's the state, was it the state as such, or was it only, in effect, the state that the fee award ran against? Was there a fee award that said, you, state, shall pay, or was a fee award that said, you, Mr. Finney, assuming it was Finney who was the defendant in your official capacity, are responsible for getting this fee award paid? Which is it? So the actual issue in Hutto, the disagreement between the majority and the dissent, in that opinion, was over whether the fee award was a direct obligation of the government, or whether it was an obligation of the officials who then, under state law, could seek reimbursement or indemnification from the state. And the dissent said it should be to figure out what the officials, how they pay it. But the majority said, no, it is a direct obligation of the government. And they specified the Department of Corrections, but there was no real issue in that case over whether it made a difference to say Department of Corrections or to say state, because we know that from Brandon, when the court revisited its discussion of Hutto and said, we considered it obvious that the state would pay the award because it was a suit, it was an official capacity suit. And Brandon, of course, is the case where the Supreme Court first said explicitly that the state is liable. Excuse me, what the opinion actually says is the order does not expressly direct the Department of Corrections to pay the award. But since petitioners are sued in their official capacities, and since they're represented by the Attorney General, it's obvious that the award will be paid with state funds. That's what I was asking. Well, it also says at the end, I don't have it right in front of me, but the end of the opinion that it says it's to be, it's an award against the Department of Corrections. And then in Brandon, they said that was an award against the state. So I have a question. Why is the city attorney office representing the sheriff here, not the county attorney or the state? Yeah, the city and county, it's city and county. So city attorney represents both the city and county? Yes. Okay, that's different from LA. Yes. I'm just wondering, but why isn't the state, if the sheriff is being sued as an agent of the state, why isn't the state representing the sheriff? Well, the state's position is that the sheriff is not entitled to representation by the state. So we know that's an issue. And there's certainly no claim in the case that the city attorney's represent the sheriff. I do think in other circumstances, the state would be representing the sheriff. I mean, fundamentally, what this case is, is a challenge to the constitutional adequacy of judicial procedures for prearrangement release, because it's the judiciary that actually makes those decisions. And the sheriff is only really the defendant here because the sheriff enforces the court's procedures and the court's orders. This claim could have been brought as a 2241 habeas petition, the exact same claim. And I think if it had been, there's no question that the attorney general would be representing the sheriff in that case, because that's what the attorney general does. And the fact that the action was one way rather than another, doesn't change the fact that really what is at issue here are judicial procedures. And the superior court, of course, is a state agency. And the sheriff is only here because the sheriff is required by state law to enforce the superior court's orders. And I think that supports the conclusion that we're really talking about the because the sheriff enforces the superior court's bail schedule. Okay, Mr. Hussaini, I think you're two minutes. Thank you, Your Honor. Good morning, Your Honors, and may it please the court. My name is Sadiq Hussaini of Latham and Watkins, and we are pro bono counsel to the plaintiff appellee class of indigent arrestees. Plaintiffs share the positions articulated by Mr. Goldman on who is legally required to pay the attorney's fees in this case. I just wanted to take the podium briefly to discuss two key points. The first, why plaintiffs care about the result here, and what we see are the consequences of California's approach. On the first point, the core backdrop that plaintiffs don't want to lose sight of is that there's no dispute that the civil rights regime in general. Section 1988 is designed to enable and encourage civil rights litigation to validate constitutional rights, and the recovery of fees is often the only available tool to ensure that indigent plaintiffs in particular are not barred from accessing justice. And it's important here to flag that our co-counsel, Equal Justice Under Law, took significant risks and spent significant resources six years ago, bringing this case in public interest, and nobody's disputing any of that. The fact that the payment of the fees... Can I ask whether there's... The fee award in this case specifically runs against the state, is that right? Yes, your honor. No, the state itself as such was not a party. At that point... Why doesn't it... As I just read in Hutto versus Finney, the award as such ran against the actual defendant, and then the court said at the end, as was pointed out, that the intent was that the state agency would pay it, so consequently, the Department of Corrections is the entity intended by Congress to bear the burden of counsel fees award. But as a technical matter, the fee ran against the actual defendant. Why isn't that what should be happening here? Our view, your honor, is similar to as Mr. Goldman articulated. The entity that is ultimately liable is the state. That was our read of the case. That's our read of the Hutto line of cases. But it also says that the actual defendant, the fee award as such ran against the defendant, which is how litigation usually works. Then there are consequences to that. When a defendant is acting for a governmental entity, Hutto says that means the government entity is supposed to pay the fees, and how exactly one enforces that, I guess, is down the line. But there is something a little peculiar about running an award against a party that technically isn't in litigation. We understand that, your honor. But the party that ultimately bears the obligation, in our view, is the state, and we thought that the fee award should run against the state. We did not read Hutto or the Hutto line of cases to say that that extra step essentially was required. We didn't see that as a problem. And part of our core concern we have with California's approach in general. I want to talk about this in particular because it speaks to your honor's questions earlier and Judge Baldock's questions earlier as well about when did the state have the right to intervene or not? When was it a party? When was it not? The state of California chose a four-year wait-and-see approach on the state actor question. And if it's allowed to prevail in this instance, that would, in our view, create delay and uncertainties and inefficiencies in these fee requests going forward. And here's what I mean by that. Judge Gonzales-Rogers, in October of 2016, was very clear in her order. And I'll read two pieces of it because it speaks to Mr. Zeldon's and Peta's earlier conversation about agency and actor and what really was at issue. Judge Gonzales-Rogers ruled that this state, this is on page 15 of her order, docket number 99, the state is the relevant actor when the sheriff detains a person who does not pay bail. And then she went on to say earlier that the court concludes that the defendant, Sheriff Hennessey, acts on behalf of the state, which she said is the relevant actor, when the sheriff detains a person based on his or her inability to pay. At that time, Judge Baldock, the state was a part of the case. The attorney general appeared. That was the same order that dismissed the attorney general. There's the same order in the briefing where the attorney general was on notice that this issue is the state acting on behalf of the county or is the sheriff acting on behalf of the county or the state was fully and firmly at issue. They did not say anything in that briefing, taking the position now that the sheriff somehow is a county actor or is not some sort of agent of the state. Not once. They did take a position objecting to this order when they were dismissed. They did not ask the court to reconsider this order. However, they were still part of the case. There was a stipulation filed in this case by the same counsel here one month and a half later, where in that stipulation, the attorney general states that the attorney general of California has informed plaintiff's counsel and counsel for the CBAA, who is ultimately the intervener, that the attorney general of California is to intervene in this action. So at the time of the order, they could have made these determinations or arguments about whether the sheriff was a state or county actor. After the order, they could have objected. They could have filed for reconsideration. And a month and a half later, they told this court and the parties that the attorney general actually was going to intervene and become part of this lawsuit. They elected not to do that. And our issue with all of this, they filed a notice of non-intervention actually shortly thereafter because they decided not to intervene. And here's our problem, right? Substantively, these determinations are being made, claims are being decided upon, the actual parties in a case early on, four years, and the state decides to sit quiet. It cannot, four or five years later, come back and say, oh, in fact, we had an issue all along. The sheriff was a county official. The sheriff wasn't somehow an agent of the state. Why would they not be required to have stated then? Well, suppose they could do it. They haven't done. Isn't that right? I know there's my understanding is that they are arguing that they're not an agent, whatever that means, but not that the original determination that they were acting on behalf of the state was wrong. They're saying there's something different about deciding that for immunity purposes and deciding it for fees purposes, but they're not contesting, although I would think they could, the earlier decision. So I don't know that they weren't actually a party, but they haven't. Yes, yes, your honor. We agree with that. They have it, but to the extent the argument about whether the sheriff is an agent versus an actor is meant to sort of occlude the landscape, which we think is clear, but the court's determination was that the sheriff is acting on behalf of the state, and that's what matters as far as fee liability goes. We think that argument is irrelevant, but to the extent they're using it as a backhand approach or argument to take issue with the actual relevant question that was decided by Judge Gonzalez-Rogers four plus years ago, they cannot do that. And our point is it creates consequences for the plaintiffs in these cases. It creates consequences for the court for later determinations or arguments to be made when all along, again, to your question, Judge Baldock, the state was able to make these points and they did not. If for some reason they thought this agency versus actor what is a state official under the constitution distinction was important, they absolutely should have made it and they did not. All right. Thank you, counsel. Mr. Zepeda, I'll give you a minute, even though you are over as well. I'm going to ask you a question and see if you'll get a little more. The Sixth Circuit opinion is pretty much exactly on point. Is that right? I'm sorry, your honor, which one? Circuit opinion. Miller versus Caudill is pretty much exactly on point here. Is that right? No, your honor, we disagree. We disagree with that. Miller did not involve a case where the state had been dismissed as immune has in this case and did not further participate in the case. There's also beyond that fact, there's specifics regarding the type of control that the state had over the defendant in that case. But as to the question that you're arguing now, i.e. whether the determination for purposes of liability and the determination of question of fees is the same question. Caudill is quite specific about that. No, your honor, it's specific as to the particular aspects of the law that were at issue and the type of control that there was in that particular case. And I don't remember specifically off the top of my head, but the involvement of the state through his attorney general in defending the particular local official there. And this takes me back to a response from Mr. Goldman to Judge Warlaw's question in terms of why is the sheriff being represented by a city and county of San Francisco? Why is the sheriff being represented by the city attorney? And submit to the court that if in fact the sheriff was acting as an agent of the state, then the sheriff at that point, if the sheriff believed that that meant that for fees liability and for every other purpose, that the sheriff was a state agent, then the proper course would have been for them to say, okay, state, you take over the litigation. Okay, state, you decide the litigation positions. That's not what they did. The sheriff negotiated her own stipulated judgment that runs only against the sheriff and the sheriff's procedures. And the sheriff also was represented by the city attorney. The sheriff filed an answer saying, I will not defend state law. We have not weighed the challenge to the agency argument either, your honor. I wanted to go ahead and respond to Mr. Goldman's question. It is true that the state filed additional responses on the merits in the motion to dismiss back before the district court had ruled. The state filed alternative arguments saying on the merits the claim fails, but by the way, we're immune. After that, the state had nothing else to do in the case and was not involved in the case up until the issue regarding fees came up. The state was not consulted regarding the stipulated judgment. The state was not involved in any discovery proceedings. The state did not represent the sheriff. There is simply nothing factually or legally that supports the district court's conclusion that for purposes of fees liability, the state is the party that should be- If the state didn't have the opportunity earlier to contest the ruling with regard to whether the sheriff was a state actor. I understand you think it's a different issue, but you could have raised that now. In other words, you could have said in the alternative, if they're the same issue, he's not a state actor, but you're not arguing that. Your honor, what we're saying is that he's not a state actor for purposes of fees liability. We're not disputing- You're not disputing the question whether he was a state actor for purposes of ex parte and liability. But you could have, but you're not. That is correct. Our brief focus on the reason of why there's a difference between agency for purposes of what the district court concluded. Rather than the alternative argument would be, we didn't have the chance to tell you this earlier, but that you were wrong the first time. Because the district court did not decide fees liability back in its 2016 order. Clarify that you're not arguing that, but you could have. Thank you, counsel. Bethan v. City and County of San Francisco will be submitted. And we're going to take up Garcia v. ISS Facility Services.
judges: Baldock, Wardlaw, Berzon